Firmstone *v*. De Camp.

1. Equity will protect a party against a plain mistake in a written agreement.

2. An injunction will not be dissolved as of course, even though the equity of the bill is denied by the answer. The court may, in its discretion, retain the injunction until the hearing, if the circumstances of the case, and justice between the parties, require it.

---

This cause was argued before J. Wilson, esq., one of the masters of the court, upon a motion to dissolve the injunction, which issued pursuant to the prayer of the bill.

*Mr. Vanatta*, for defendant, in support of the motion, cited 1 *Bouvier's Dic. "Accident;"* 1 *Story's Eq. Jur.*, § 149, 152; *Ibid.*, § 78, 93, 99 *b*, 101, 105, 109; *Parsons* v. *Heston*, 3 *Stockt.* 155; *McKelway* v. *Cook*, 3 *Green's Ch. R.* 102; *Deare* v. *Carr*, 2 *Green's Ch. R.* 513; *Read's adm'r* v. *Cramer*, 1 *Green's Ch. R.* 277.

*Mr. Dalrymple*, for complainant, contra, cited 1 *Story's Eq. Jur.*, § 152, 155; *Green* v. *Morris & Essex R. R. Co.*, 1 *Beas.* 165; *S. C., on appeal*, 2 *McCarter* 469; *Stotesbury* v. *Vail*, 2 *Beas.* 390, 394.

THE MASTER. Upon the filing of the complainant's bill, and the affidavits annexed thereto, an injunction was granted according to the prayer of the bill. The defendant, having filed his answer, now moves to dissolve the injunction, upon two grounds. 1. That no sufficient ground for injunction is made by the bill. 2. That the equity of the bill, if any, is met and denied by the answer.

Let us examine the first ground. The bill states, that on or about the twenty-seventh of November, 1863, the complainant made an agreement with the defendant, to sell and deliver to him twenty-five hundred tons of iron ore, at a mine, then and still owned by the complainant, situate upon a certain lot in the township of Sparta, in the county of Sussex, in this state, containing thirty-two acres or thereabouts. That immediately after the terms of sale had been agreed upon betwen the parties, the complainant wrote a memorandum of the same, and read it to the defendant, who assented and agreed thereto, but that this memorandum was not signed by either of the parties, it being supposed by the complainant that the agreement was to be a verbal one, and the memorandum being made by him, so that there might not, thereafter, be any dispute about the terms of the agreement. That a few days thereafter, the complainant, who resided at Easton, Pennsylvania, received, by mail, from the defendant, who resides in Morris county, in this state, two

copies of a written agreement, under seal, and executed by the defendant, purporting to contain the said agreement for the sale and delivery of the ore. That the complainant, conceiving that the said agreement was not truly set forth in said written articles, declined to execute them, and returned them to the defendant. That the complainant then drew out, at length, two copies of the agreement, as he understood it to have been made, and having signed one of them, forwarded them to George Richards, with directions to procure the signature of the defendant to the other, and then deliver to him the copy which the complainant had signed. That Richards did so, and returned to the complainant the copy so executed by the defendant.

The agreement, as so executed, is set forth in the bill, and the complainant thereby agrees to sell to the defendant, "at the Ogden mine, Sussex county, New Jersey, twenty-five hundred tons of good, merchantable iron ore, at the rate of one hundred tons per week, commencing first December, 1863." And the defendant agreed to pay for the same, two dollars and fifty cents per ton at the mine, and to take away the same at the rate of one hundred tons per week, and to pay for the same weekly, at the mine.

The bill further states, that the complainant meant and intended by "the Ogden mine," in the agreement mentioned, the mine on the said thirty-two acre lot, and no other, and that it was expressly agreed upon and understood, prior to the making of said memorandum, and prior to drawing and executing the written agreement, set forth in the bill, that the twenty-five hundred tons of ore were to be mined and taken from the mine on the said thirty-two acre lot, and no other, and that the defendant so understood the contract and agreement, and could not have understood otherwise. That the vein of ore upon which said mine is situated, extends in length, at least one and a quarter miles, and upon it are several mines, pits, or excavations, from which iron ore had been taken at the date of said agreement, although the only mine ever owned by the complainant in

Sussex county, is that upon the said thirty-two acre lot. That there is a mine upon the same vein, upon a seventy-five acre lot, which, at the date of said agreement, belonged, and still belongs, to Joseph G. Fell, but which, for about six months, then last past, had been, as a matter of convenience to said Fell, worked in the name of complainant, although he had no interest in it. That said seventy-five acre lot adjoins said thirty-two acre lot, and was formerly owned by defendant. That complainant has never resided in New Jersey, and at the date of said agreement was not acquainted with the particular names by which the different mines in the said vein of ore were designated, but he had always called, and heard called, the mine on said thirty-two acre lot, "the Ogden mine," and by no other name, and he supposed that the use of that name in the agreement would refer to the mine on said thirty-two acre lot, inasmuch as he neither owned, nor controlled, any other mine on said vein of ore, or elsewhere in that vicinity. That before and at the time of making said agreement, the defendant was well acquainted with all the different mines on that vein of ore, and with their condition, value, ownership, and particular names and designations. That the defendant knew that the contract between them referred to the mine on the thirty-two acre lot, yet he did not intimate or suggest, at any time prior to the execution of the said written agreement, that said mine was not correctly designated as "the Ogden mine." That during the negotiations which led to the making of said contract, it being known that the mine on said thirty-two acre lot was then filled with water, and could not be worked immediately, and the defendant desiring to have ore to use at his forge, it was further agreed between them, that the complainant would make an arrangement with Mr. Fell, the owner of the mine on the seventy-five acre lot, by means of which the defendant could be supplied with ore, at the rate of one hundred tons per week, until the complainant could put the mine on the thirty-two acre lot in working order, and be ready to deliver the ore there, after which the complainant

was to deliver the ore at the mine on the thirty-two acre lot. That the complainant did make such arrangement with Mr. Fell, and by means thereof, the defendant was supplied with ore at the mine on the seventy-five acre lot, at the rate of one hundred tons per week, from the first of December, 1863, until about the twenty-third day of January following, when the complainant, having put his mine on said thirty-two acre lot in order, was prepared to deliver, and offered to the defendant to deliver to him there, the residue of said ore. That the defendant, after his workmen and carters had taken away about thirty-six tons from the mine on the thirty-two acre lot, refused to take any more at that mine, and insisted that he was entitled to have the residue of said twenty-five hundred tons of ore delivered to him at the mine on the seventy-five acre lot, alleging that the Ogden mine is the one on the seventy-five acre lot, and that the mine on the thirty-two acre lot is called the "Sharp mine."

But the complainant insists to the contrary, and alleges that the contract made between them was for the delivery of the ore at the mine on the thirty-two acre lot, and no other, and that in drawing and executing the written agreement he believed that the name, "Ogden mine," designated the mine on the thirty-two acre lot, and that if that name does, as defendant insists, apply only to the mine on the seventy-five acre lot, that there was a mistake made in drawing said written agreement, and that the mistake ought to be corrected.

The defendant has brought an action at law upon the written agreement against the complainant, for non-delivery of the ore at the mine on the seventy-five acre lot, and intends to insist and prove that "the Ogden mine" is on this last named lot, and the prayer of the bill is that the agreement may be delivered up to be cancelled, or that it may be corrected, by striking out the name "Ogden mine," and inserting in lieu thereof "the mine of said Firmstone in," or words to that effect, and that in the meantime the defendant may be en-

joined from setting up or attempting to prove, in said suit at law, that said agreement is, or ever was, an agreement binding the complainant to deliver said ore at any other mine than that on said thirty-two acre lot.

Annexed to the bill is an affidavit of said George Richards, in which, among other things, he states that he was present at the making of the agreement between the parties, and that the agreement was to deliver the ore at the mine on the thirty-two acre lot.

Taking the facts as stated by the bill, it is a case of a mistake, made in reducing to writing an agreement previously entered into by the parties, so that in consequence of such mistake, the complainant on the face of the written articles appears to be bound to do, what in truth and in fact he never contracted or agreed to do. And the defendant is seeking, by a suit at law, to take advantage of such mistake, and to recover damages against the complainant for not performing that which he did not agree to perform.

In *Smith* v. *Allen, Saxton's R.* 53, in which it was alleged in the complainant's bill, that in a bond on which a suit had been brought at law, there was a mistake, which was an obstacle to recovery by the plaintiff, and therefore praying to have it corrected, to enable him to recover in that suit, the Chancellor said: "That a *defendant* may set up and avail himself of a plain mistake in a written agreement, and thereby relieve himself from the operation of the agreement, is a principle too well settled in courts of equity to be shaken at this day. It would be a waste of time to enumerate the authorities." The Chancellor then proceeds to show that not only is the *defendant* entitled to this relief in equity, but that the *plaintiff* is entitled to the same assistance, to enable him to recover, when he is prevented by reason of a mistake in a written agreement.

So in *Henkle* v. *Royal Exchange Assurance Co.*, 1 *Vesey, sen.*, 317, where the bill was filed to have a policy of insurance rectified, which by mistake had been so drawn that the warranty was from *London*, whereas, as it was insisted, it should

have been from *Ostend*, the court said: "No doubt, but this court has jurisdiction to relieve in respect of a plain *mistake* in contracts in writing, as well as against *frauds* in contracts, so that if reduced into writing, *contrary to the intent of the parties*, on proper proof that would be rectified." The same doctrine is laid down in the following cases. *Skillman* v. *Teeple, Saxton's R.* 232; *Hendrickson* v. *Ivins, Ibid.* 562; *Gillespie* v. *Moon,* 2 *Johns. Ch. R.* 585; *Lyman* v. *United Ins. Co.,* 17 *Johns. R.* 377; 1 *Story's Eq.,* § 115.

The case, therefore, as stated by the complainant in his bill, is one which entitles him to relief in this court, and the injunction was rightly issued to restrain the defendant until the matter could be fully heard and investigated.

But the defendant insists further, that even if the case made by the bill shows sufficient grounds for an injunction, yet that the equity of the bill is fully met and denied by the answer, and that therefore the injunction should be now dissolved.

The answer states fully and distinctly that the agreement was not for ore from the mine on the thirty-two acre lot, but that it was for ore from the mine on the seventy-five acre lot, and no other, and that the mine on the seventy-five acre lot is the "Ogden mine," and that the mine on the thirty-two acre lot is called the "Sharp mine." And it denies that there was any mistake made in reducing the agreement to writing. It also states that the taking of a portion of the ore from the mine on the thirty-two acre lot by the carters and workmen of the defendant was without his knowledge, and that as soon as he knew of it, he forbid it, and insisted that he was entitled to have all the ore from the mine on the seventy-five acre lot, which is richer and more valuable than that from the other mine. A considerable portion of the answer contains matter not responsive to the bill, and which cannot, therefore, be considered on the present motion.

That part of the bill which states that the agreement was for ore at the mine on the thirty-two acre lot, and no other, and that there was a mistake made in reducing the agreement

to writing, is met and fully denied by the answer. It is a material part of the bill, and without which, an injunction could not have been granted. Yet it must be observed that the affidavit of George Richards, annexed to the bill, states that he was present when the agreement was made between the parties in regard to the ore, and that it was for ore from the mine on the thirty-two acre lot, and not from the mine on the seventy-five acre lot. This testimony and the complainant's statements in the bill agree on this important point, and there is nothing to weigh against them, but the answer of the defendant, which is not supported by any testimony, nor does the answer state that there were no other persons but the complainant, and Richards, and the defendant, present at the making of the agreement, or that if present, the defendant could not procure their affidavits as to what really took place at that time.

But granting that on this part of the case the equity of the bill is met and denied by the answer, it does not follow that this court will, of course, dissolve the injunction. The court may, in its discretion, retain the injunction until the hearing, if the circumstances of the case, and justice between the parties, require it. *Merwin* v. *Smith*, 1 *Green's Ch. R.* 182; *Chetwood* v. *Brittan*, *Ibid.* 438; *Fleischman* v. *Young*, 1 *Stockt.* 620; *Stotesbury* v. *Vail*, 2 *Beas.* 390.

If the injunction should be now dissolved, and De Camp should proceed in his suit at law, and recover damages against the complainant, and it should in the end appear that there was a mistake in reducing the agreement to writing, as alleged by the complainant, and that the complainant ought to be repaid the damages so recovered of him, no good would arise to either party, and the trouble and expense of the litigation at law would have been worse than useless. If the injunction, on the other hand, is retained until the hearing, and it should then be decided that there was no mistake, and that the complainant is not entitled to relief, he would remain liable upon his contract, and it could then be enforced against him. It was not suggested upon the ar-

Firmstone *v.* De Camp.

gument, nor does it in any way appear, that if the injunction be continued, the rights or interests of De Camp would be endangered by the delay necessary for the investigation of the case in this court, nor that there is any reason to apprehend that Firmstone is insolvent, or irresponsible, or likely to become so. He, nevertheless, by his counsel in open court, upon this argument, tendered himself ready to give security, if required, for such damages as De Camp may eventually recover against him (if any) for breach of the agreement, and for all loss and damage which De Camp may suffer from any delay arising from the proceedings in this court.

Upon consideration of the whole case as it is now presented to the court, I am of opinion that the present motion should be denied, and the injunction retained until the hearing, (the costs to abide the event of the suit,) and I respectfully advise the Chancellor to make an order accordingly.